

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 498 | **DATE** | 3/30/2004 |
| **CASE TITLE** | Trans Helicoptere vs. Jet Support | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Status hearing set for 04/22/04 at 9:00 a.m. For the reasons stated in the attached memorandum opinion, the Court hereby grants defendant's motion to dismiss the negligent misrepresentation claim (Count VII) and the breach of fiduciary duty claim (Count VIII). We deny the motion to dismiss the fraud claim (Count VI).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 30 2004 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW6 | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRANS HELICOPTERE SERVICE, )
a French limited company, )
)
        Plaintiff, )
)
v. )
)
JET SUPPORT SERVICES, INC., )
a Delaware corporation, )
)
        Defendant. )
_____ ) No. 03 C 0498
JET SUPPORT SERVICES, INC., )
a Delaware corporation, )
)
        Counterclaimant, )
)
v. )
)
TRANS HELICOPTERE SERVICE, )
a French limited company, )
)
        Counterdefendant. )

DOCKETED
MAR 3 0 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

    This matter is before the court on the Defendant Jet Support Services, Inc's ("Jet") motion to dismiss. For the reasons stated below, we grant the motion to dismiss in part and deny the motion to dismiss in part.

1

## BACKGROUND

Jet provides programs that fund the maintenance and repair of jet aircraft engines for the benefit of their customers, the owners and operators of the jet aircraft engines. Jet does not personally provide engine maintenance and repair services, but rather provides a program to fund the services by third parties in the form of an engine maintenance service contract ("EMS Contract"). To obtain an EMS Contract, the customer must pay a one-time enrollment fee, an initial engine inspection fee and a monthly fee.

On or about December 29, 1997, Plaintiff Trans Helicoptere Service ("Trans H") entered into an EMS Contract with Jet for both engines of a Cessna Citation II aircraft ("contract 436-1"). Section V(d)(iv) of contract 436-1 is pertinent for the fraud claim in the instant action. The section outlines Jet's policy for early termination of the contract, allowing a credit towards a replacement aircraft when certain conditions are met. In relevant part, §V(d)(iv) states:

> In the event . . . the Customer sells the Aircraft and the purchaser does not wish to enroll in the Program . . . then the Customer shall be eligible for a credit (the "Credit") for certain amounts paid into the Trust to be applied toward any subsequently acquired aircraft (the "Replacement Aircraft") which the Customer enrolls in the Program. Once a Replacement Aircraft is accepted by [Jet] as being eligible for the Program, the Credit may be used to reduce the amount of the Pro Rata or Buy-In due on the Replacement Aircraft. The amount of the Credit shall be equal to 100% of all amounts paid with respect to the Engine(s) after deducting all expenditures made on behalf of, and expenses attributable to, the Engine(s).

On or about August 24, 1998, Trans H entered into another EMS Contract with Jet for coverage of both engines of a Falcon F100 aircraft ("contract 476-1").

Trans H alleges that in or about February, 2001, Trans H contacted Jet to inform Jet that the aircraft covered by contract 436-1 was sold to a new owner and contract 436-1 had not been transferred with the aircraft. Pursuant to §V(d)(iv) of contract 436-1, Trans H alleges they requested the account balance of contract 436-1 be transferred to contract 476-1, which covered the Falcon F100 aircraft which was still owned by Trans H. According to Trans H, Jet contacted the new owner of the Cessna Citation II aircraft, Delta Romeo ("Romeo"), and induced Romeo to assert a claim of ownership against contract 436-1. Trans H alleges that around February of 2001 Jet decided not to transfer the balance from contract 436-1 to contract 476-1.

In April 2001, John Haskins ("Haskins"), President of Jet, wrote a letter to Trans H and Romeo addressing certain issues and requesting that the parties resolve the dispute regarding contract 436-1. Jet informed Trans H via letter dated May 2, 2001 that contract 476-1 was being placed on "credit hold" due to arrearage in payments. From June 20, 2001 until March 4, 2002 Romeo and Trans H litigated the issue of ownership to contract 436-1 in the Northern District of Illinois (case number: 01 C 4684). The litigation terminated when the parties filed a stipulation to dismiss wherein Trans H was held to maintain all ownership rights and privileges associated with contract 436-1.

In a letter dated July 30, 2001 from Haskins to Michael Dreyfus, President of

Trans H ("Haskins letter"), Haskins addressed certain issues in dispute between Trans H and Jet. In relevant part, Trans H alleges that two particular statements within the letter give rise to their allegations of fraud, negligent misrepresentation and breach of fiduciary duty: (1) That Jet would transfer a credit or "trust balance" owed to Trans H under contract 436-1 to contract 476-1 and (2) the trust balance equaled $40,571.12. Trans H alleges that in fact, the balance was never transferred and that the balance of the trust account was in excess of $100,000. On September 14, 2001 Jet informed Trans H by letter that contract 476-1 was being terminated for delinquent payments and in March 2002 the contract was in fact cancelled. Jet seeks to dismiss the fraud claim ("Count VI"), the negligent misrepresentation claim ("Count VII"), and the breach of fiduciary duty claim ("Count VIII") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 444-45 (7th Cir. 1998);*Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim,"*Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

### I. Fraud Claim (Count VI)

Jet first argues that the fraud claim should be dismissed because it constitutes a promissory fraud claim and that promissory fraud is not actionable in Illinois except in limited instances. *Desnick v. American Broadcasting*, 44 F.3d 1345, 1354 (7th Cir. 1995). However, we agree with Trans H that the fraud claim is not based upon a future promise. Trans H alleges that in the Haskins letter Jet indicated that "[t]he trust balance of $40,571.12 *is being transferred* to contract 476-1 from contract 436-1." (emphasis added). The letter states as a fact that the transfer is

being made contemporaneously with the mailing of the letter and a reasonable expectation by the recipient would be that the transfer was completed while the letter was in transit. Therefore Trans H does not make an allegation of a false promise of future conduct. We note that even if Trans H fraud claim constitutes promissory fraud, Trans H has shown that the alleged fraud was part of a scheme to defraud Trans H which included among other things Jet's alleged communications with Romeo. *See Desnick*, 44 F.3d at 1354 (stating that promissory fraud is actionable if it is a "part of a 'scheme' to defraud.").

Jet argues that, reading the letter as a whole, the promise to transfer the balance was conditional in nature and only indicates a willingness to transfer the balance in the future. We disagree. Such a conclusion is not clear even when considering the letter as a whole. Although the letter makes reference to outstanding issues and working out a resolution of some issues, the letter clearly states that in regards to the balance, the balance "is being transferred." There is nothing conditional about such a promise and a reasonable interpretation is that it was part of a good faith gesture to facilitate the resolution of the other issues. Jet argues that the promise was conditional, but the letter does not make such an assertion clear. A plain reading of the statement in the letter supports Trans H's view and there are not other allegations that negate such a finding.

Jet next argues that Trans H has failed to plead the fraud claim with particularity and failed to plead the elements of a fraud claim under Illinois law.

While the notice pleading standard is generally applied in the federal courts, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b), which is accomplished if the plaintiff identifies "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)(quoting*Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)).

Jet claims that Trans H has failed to plead all of the elements of fraud under Illinois law. However, Jet misunderstands the requirements of Federal Rule of Civil Procedure 9(b). While a plaintiff is required to plead with particularity, that does not mean that the federal court will adopt the state pleading requirements or that a plaintiff must plead facts in support of each element of a cause of action and facts to show that the alleged statements were false. *See Bankers Trust Co.*, 959 F.2d at 683(explaining that Rule 9(b) does not "require full-scale fact pleading in a fraud case. . . ."); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)(explaining that the Rule 9(b) particularity requirement requires a plaintiff to plead the "'who, what, when, and where' of the alleged fraud."). Jet makes several arguments as to why we should conclude that Trans H's reliance was not reasonable. We cannot agree and regardless, for the purposes of the instant motion we are required to accept all alleged facts as true and make a reasonable inferences in favor

of Trans H. Jet's arguments are premature at this juncture. *See Conley*, 355 U.S. at 45-46(stating that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

Trans H has plead the fraud claim with particularity. Trans H alleges that in a letter from John P. Haskins, President of Jet, to Michael Dreyfus, President of Trans H, dated July 30, 2001, Jet indicated that "the trust balance of $40,571.12 is being transferred to contract 476-1 from contract 436-1." Trans H alleges that the balance was not in fact transferred and the amount in the balance was in fact in excess of $100,000. Thus, Trans H has identified "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co.*, 959 F.2d at 683. Trans H further alleges that it relied upon the statements in the letter and did not make additional payments toward contract 476-1 and suffered harm as a result of its reasonable reliance. We note that even if the Illinois pleading requirements applied in this case Trans H has sufficiently plead the elements of a fraud claim and we are unable to conclude, based upon the pleadings, that there was not reasonable reliance by Trans H. The motion currently before us is a motion to dismiss and Jet's arguments constitute a premature attempt at discrediting the validity of the allegations made by Trans H and an attempt to show that Trans H cannot prove each of the elements of the fraud claim. Therefore, we

deny the motion to dismiss the fraud claim (Count VI).

We note that Trans H includes in the amended complaint allegations concerning Jet's contact with Romeo in the section of the amended complaint devoted to the fraud claim. However, those allegations concerning Romeo are not the basis for a separate fraud claim. Trans H has not alleged sufficient facts to state with particularity a fraud claim pertaining to the alleged improper communications with Romeo. However, Trans H makes it clear in its answer that its fraud claims were based upon the Haskins letter. Trans H indicates in its answer to the instant motion that the Romeo allegations were mainly included in the amended complaint in case we found the fraud claim to be a promissory fraud claim and Trans H was required to show that there was a scheme to defraud Trans H. *See Desnick*, 44 F.3d at 1354(stating that a promissory fraud claim is allowed if the fraud is part of a larger scheme to defraud the plaintiff).

## II. Negligent Misrepresentation Claim (Count VII)

In Count VII, the plaintiff alleges that the same representations actionable as fraud under Count VI are also actionable as negligent misrepresentations under Illinois law because the statements in the Haskins letter are negligent misstatements of fact.

Jet argues that Trans H's negligent misrepresentation claim is barred by the economic loss doctrine. Under the economic loss doctrine a plaintiff is barred from

recovering purely economic losses "under the tort theories of strict liability, negligence, and innocent misrepresentation." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1199 (7th Cir. 1997). Trans H acknowledges that it is seeking compensation for purely economic losses but argues that Jet supplies information for the guidance of its clients in their business decisions. An exception to the economic loss doctrine for a negligent misrepresentation is "where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Id.* at 1199-2000.

Trans H argues that we should not find that the exception does not apply to Jet simply because Jet does not solely provide information. Trans H argues that a court should determine whether a party is in the business of supplying information for others by conducting a "precise, case-specific inquiry." *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 296 (Ill. App. Ct. 1999)(quoting *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989)). However, even after such an inquiry it is clear that the exception to the economic loss doctrine is not applicable in the instant case.

Trans H alleges in its complaint that Jet, in exchange for payments, "provides funding for engine services performed by third-party providers." (A Compl. 8). Thus Trans H alleges that Jet provides funding rather than information. Trans H argues that Jet provides both funding and information for the guidance of others in

10

their businesses and that Trans H has alleged sufficient facts to defeat a motion to dismiss. In support of this assertion Trans H points out that it alleges that Trans H invoiced demands for payments to Jet (A Compl. 61), that payment for services were made at the direction of Jet (A Compl. 62), and that Jet provided statements of accounts in connection with the payment of funds and account balances (A Compl. 63).

Both Jet and Trans H cite *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 296 (Ill. App. Ct. 1999) in support of their positions. Under Illinois law the test for whether a party is in the business of offering information for the guidance of others in their business transactions is whether or not the "end product" of the relationship between the party and its clients is a "tangible thing." *Tolan and Son, Inc.*, 719 N.E.2d at 296. If the end product is tangible then the party's business does not fit within the exception to the economic loss doctrine. *Id.* Although there is range of services that may fall within the exception even though they are not at the "pure information end" of the spectrum, "[w]here the information supplied is merely ancillary to the sale of a product or service or in connection with the sale" the exception to the economic loss doctrine will not be applicable. *Id.* at 296-97. The service falls within the exception to the economic loss doctrine if the "value of the service lies in its analytical work rather than a tangible end product. . . ." *Id.* at 297.

In the instant case although Trans H alleges that some information is provided by Jet, Trans H clearly alleges that the main ultimate service provided by Jet is

11

tangible, namely financing resulting in the repair and maintenance of engines. Trans H has not alleged allegations that would lead us to conclude that any information in connection with the sale of the service is other than ancillary to Jet's main product. The services provided by Jet provide its customers with the value of the financing rather than providing any analytical value that can be derived from information given to its customers. If Jet merely acted as an advisor to its clients regarding obtaining financing, and provided information to its customers regarding financing options, Jet's services would more likely fall within the exception. However, Trans H alleges that Jet provides a service other than providing information. Trans H alleges that Jet is in the "business of providing, managing, and administering programs for the repair and maintenance of turbine engines to owners and operators of jet aircraft." (A Compl. 4). Trans H also alleges that Jet "provides funding for engine maintenance services performed by third-party providers." (A Compl. 8). Therefore the economic loss doctrine exception is not applicable in this case and we grant the motion to dismiss the negligent misrepresentation claim.

### III. Breach of Fiduciary Duty Claim (Count VIII)

Jet argues that the breach of fiduciary duty claim should be dismissed because Jet did not owe a fiduciary duty to Trans H. Trans H claims that by misstating the amount of the funds held in trust for the benefit of Jet with respect to contract 436-1, Jet breached a fiduciary duty to Trans H. A fiduciary relationship does not

12

automatically arise between parties that have exchanged binding contractual promises. *See Gutfreund v. Christoph,* 658 F.Supp. 1378, 1395 (N.D. Ill. 1987)(stating that "[m]ost business relationships do not of themselves create fiduciary obligations").

Contract 436-1 provides that monthly payments and fees owed under the contract are to be paid to the "Trust", maintained by LaSalle National Bank as trustee. Jet is not listed as the trustee of the Trust. Jet was not the trustee of the Trust under contract 436-1, therefore Jet owed no fiduciary duty to Trans H to accurately account for the trust balance. Trans H and Jet were involved in a commercial contract with a 3rd party trustee accounting for the funds. Trans H sets forth no facts that indicates that Jet owed Trans H a fiduciary duty and Trans H fails to provide any legal support for its assertion that Jet owed it a fiduciary duty. Therefore, we grant Jet's motion to dismiss the breach of fiduciary duty claim (Count VII).

## CONCLUSION

Based on the foregoing analysis, we grant Jet's motion to dismiss the negligent misrepresentation claim (Count VII) and the breach of fiduciary duty claim (Count VIII). We deny the motion to dismiss the fraud claim (Count VI).

Samuel Der-Yeghiayán
United States District Court Judge

Dated: March 30, 2004