Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 498 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Trans Helicoptere vs. Jet Support Svc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendant's motion for summary judgment on Counts I and VI is granted. Counts II, III and V remain alive in this action. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 14 2004 date docketed | |
| | Notified counsel by telephone. | | | 55 |
| ✓ | Docketing to mail notices. | | rbf docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT 2004 DEC 14 AM 3:01 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANS HELICOPTERE SERVICE, a French limited company, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| JET SUPPORT SERVICES, INC., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) ) |
| JET SUPPORT SERVICES, INC., a Delaware corporation, | ) ) ) |
| Counterclaimant, | ) ) ) |
| v. | ) ) ) |
| TRANS HELICOPTERE SERVICE, a French limited company, | ) ) ) |
| Counterdefendant. | ) |

No. 03 C 0498

DOCKETED
DEC 1 4 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Jet Support Services, Inc.'s ("Jet") motion for summary judgment on Counts I and VI of Plaintiff Trans Helicopter Service's ("THS") amended complaint. For the reasons below, we grant summary judgment on both counts.

1



## BACKGROUND

Jet provides programs that fund the maintenance and repair of jet aircraft engines for the benefit of their customers who are the owners and operators of the jet aircraft engines. Jet does not personally provide engine maintenance and repair services, but rather provides a program to fund the services by third parties in the form of an engine maintenance service contract ("EMS Contract"). To obtain an EMS Contract, the customer must pay a one-time enrollment fee, an initial engine inspection fee and a monthly fee.

On or about December 29, 1997, Plaintiff Trans Helicoptere Service ("THS") entered into an EMS Contract with Jet for both engines of a Cessna Citation II aircraft ("Contract 436-1"). Section V(d)(iv) of Contract 436-1 is pertinent for the fraud claim in the instant action and it outlines Jet's policy for early termination of the contract, allowing a credit towards a replacement aircraft when certain conditions are met. In relevant part, Section V(d)(iv) states:

> In the event . . . the Customer sells the Aircraft and the purchaser does not wish to enroll in the Program . . . then the Customer shall be eligible for a credit (the "Credit") for certain amounts paid into the Trust to be applied toward any subsequently acquired aircraft (the "Replacement Aircraft") which the Customer enrolls in the Program. Once a Replacement Aircraft is accepted by [Jet] as being eligible for the Program, the Credit may be used to reduce the amount of the Pro Rata or Buy-In due on the Replacement Aircraft. The amount of the Credit shall be equal to 100% of all amounts paid with respect to the Engine(s) after deducting all expenditures made on behalf of, and expenses attributable to, the Engine(s).

2

On or about August 24, 1998, THS entered into another EMS Contract with Jet for coverage of both engines of a Falcon F100 aircraft ("Contract 476-1").

THS alleges that in or about February, 2001, THS contacted Jet to inform Jet that the aircraft covered by Contract 436-1 was sold to a new owner and contract 436-1 had not been transferred with the aircraft. THS claims that, pursuant to §V(d)(iv) of contract 436-1, THS requested the account balance of Contract 436-1 be transferred to Contract 476-1, which covered the Falcon F100 aircraft which was still owned by THS. According to THS, Jet contacted the new owner of the Cessna Citation II aircraft, Delta Romeo, Inc. ("Delta Romeo"), and induced Delta Romeo to assert a claim of ownership over Contract 436-1 against THS.

THS contends that around February of 2001 Jet decided not to transfer the balance from Contract 436-1 to Contract 476-1. In April of 2001, John Haskins ("Haskins"), President of Jet, wrote a letter to THS and Delta Romeo addressing certain issues and requesting that the parties resolve the dispute regarding Contract 436-1. Jet informed Trans H via letter dated May 2, 2001, that Contract 476-1 was being placed on "credit hold" due to arrearage in payments. From June 20, 2001, until March 5, 2002, Delta Romeo and THS litigated the issue of ownership to Contract 436-1 in the Northern District of Illinois (case number: 01 C 4684)("Delta Romeo litigation"). The Delta Romeo litigation terminated when Delta Romeo filed a stipulation to dismiss the action with prejudice and on March 5, 2002, the court

granted the motion to dismiss with prejudice and as part of the dismissal Jet was not required to transfer the trust balance to THS or Delta Romeo.

In a letter dated July 30, 2001, from Haskins to Michael Dreyfus, President of THS ("Haskins letter"), Haskins addressed certain issues in dispute between THS and Jet. THS claims that two particular statements within the letter give rise to their allegations of fraud, negligent misrepresentation and breach of fiduciary duty. THS claims that Jet promised that: (1) Jet would transfer a credit or "trust balance" owed to THS under Contract 436-1 to Contract 476-1, and (2) the trust balance equaled $40,571.12. THS contends that the balance was never transferred by Jet and that the balance of the trust account was in excess of $100,000. On September 14, 2001, Jet informed THS by letter that Contract 476-1 was being terminated for delinquent payments and in March of 2002, the contract was in fact cancelled.

On January 23, 2003, THS filed the instant action. On April 11, 2003, Jet filed a motion to dismiss the fraud claim (Count VI), the negligent misrepresentation claim (Count VII), and the breach of fiduciary duty claim (Count VIII). On March 30, 2004, we granted the motion to dismiss Counts VII and VIII of THS's amended complaint, and denied the motion to dismiss Count VI. Jet has now filed a motion for summary judgment on the breach of contract claim relating to Contract 436-1 (Count I) and on the fraud claim relating to Contract 436-1 (Count VI).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most

favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Jet argues that we should bar the claims included in Counts I and VI under the doctrine of *res judicata* because the issues could have been raised and resolved in the Delta Romeo litigation. Jet also argues that the claims included in Counts I and VI should be barred because they were compulsory counterclaims in the Delta Romeo litigation.

### I. Doctrine of Res Judicata

The doctrine of *res judicata* is utilized by the courts to bar "relitigation of claims that were or could have been asserted in an earlier proceeding." *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 259 (7th Cir. 1997). Three required elements for the doctrine of *res judicata* are: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Id.* The doctrine of *res judicata* "is designed to ensure the finality of judicial decisions." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593-97 (7th Cir. 1986)(indicating that the doctrine is not "a mere matter of practice or procedure inherited from a more technical time than ours. . .[but,

rather][i]t is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . . .")(quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917)). The doctrine of *res judicata* also "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). In addition, the doctrine of *res judicata* has been deemed to be "essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if . . . conclusiveness did not attend the judgments of such tribunals." *Id.* (quoting *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 853 (7th Cir. 1985)).

### A. Identity of Parties

Jet argues that both Jet and THS were parties in the Delta Romeo litigation. Although Jet and THS were not the only parties in the Delta Romeo litigation we agree that there is an identity of the parties.

### B. Identity of Causes of Action

The Seventh Circuit uses the "same transaction test" to determine if there is an identity of the causes of action. *Car Carriers, Inc.*, 789 F.2d at 593. Under the "same transaction test" the scope of a cause of action "consists of 'a single core of operative facts' which give rise to a remedy."' *Id.* (quoting *Alexander*, 773 F.2d at

854). Thus, under the doctrine of *res judicata*, "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. . .[and] 'a mere change in the legal theory does not create a new cause of action.'" *Id.* (quoting in part *Alexander*, 773 F.2d at 854).

Jet argues that in the Delta Romeo litigation Jet and Delta Romeo sought to have the court determine the parties' rights in relation to Contract 436-1. According to Jet, the claims brought by THS in the instant action relating to Jet's alleged breach of the contract and the alleged fraud concerning THS's right to the trust balance all could have been raised in the Delta Romeo litigation and, because the claims involved the same core of facts, the claims were required to be raised. Jet contends that the Delta Romeo litigation dealt with THS's right to the same trust balance that is at issue in the instant action. Jet claims that in the Delta Romeo litigation the court did not require Jet to transfer Contract 436-1 or any trust balance to THS or Delta Romeo

THS failed to directly address any of the elements for *res judicata* in its answer and instead provided a vague and convoluted dialogue concerning the similarity of the claims in the instant action and those in the Delta Romeo litigation. THS claims that "ownership of Contract 436-1 remained where it had been all along - - with THS." (Ans. 5). THS argues that the set of facts at issue in the Delta Romeo litigation "provides no basis for preclusion of THS's claims regarding JSSI's improper actions in connection with Contract 436-1. . .[and that] [n]othing in the

Delta Romeo Litigation, including the Stipulation to Dismiss, even purported to address these matters." (Ans. 5).

However, contrary to THS's assertions, the same core of facts and issues in the instant action in regards to Counts I and VI were raised in the Delta Romeo litigation. In Count I of the amended complaint in the instant action THS asserts that Jet breached Contract 436-1 by failing "to provide and/or pay for parts and labor for" scheduled and unscheduled "maintenance items submitted by THS. . . ." (A. Compl. Par. 16(a)(b)). THS also asserts in Count I that Jet breached Contract 436-1 by improperly canceling the contract and refusing to provide a credit "toward and other aircraft and/or EMS Contract. . . ." (A. Compl. Par 16). In Count VI of the amended complaint in the instant action THS asserts that Jet engaged in fraud in July of 2001 when Haskins falsely indicated by letter that the trust balance was being transferred from Contract 436-1 to 476-1. (A. Compl. Par. 50-51, 65).

Such matters are clearly intertwined with the facts included in the Delta Romeo litigation. For example, THS admits, pursuant to Local Rule 56.1, that in the Delta Romeo litigation, Jet brought an interpleader claim against Delta Romeo and THS to resolve Jet's liability regarding the trust account which is at issue in the instant action and that in the interpleader claim Jet denied any wrongdoing. ( R SF 15). THS does not provide a denial as to these facts, but instead indicates that the allegation by Jet is "incomplete" and refers the court to the entire interpleader document. ( R SF 15). Even if such a response could be considered a denial, it is

an evasive response and THS failed to provide a citation to the page in the document that supported such a denial. *See* Local Rule 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(indicating that a 56.1 denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence."); *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Thus, THS acknowledges that in the Delta Romeo litigation that Jet brought the interpleader claim against Delta Romeo and THS in order to resolve the rights concerning Contract 436-1 and that in the claim Jet asserted that it was not guilty of any wrongdoing. Thus, that would have been the appropriate juncture for THS to bring its claims if THS believed that Jet had engaged in fraud and other wrongdoing concerning Contract 436-1.

As indicated above, Contract 436-1 dealt with both engines of a Cessna Citation II aircraft. In the complaint in the Delta Romeo litigation, Delta Romeo specifically alleged that "JSSI has refused *either* to transfer the funds relating to the EMS contract to another THS aircraft *or* to allow Delta Romeo to use those funds with respect to the engines on the Citation II." (DR. Compl. Par. 23). Delta Romeo alleged in the Delta Romeo litigation that Jet wrote both to THS and Delta Romeo indicating that until THS and Delta Romeo resolved the rights concerning the trust funds, Jet would hold the balance in the trust. (DR. Compl. Par. 23). Delta Romeo

10

further alleged that Jet "wrongfully refused to . . . allow the balance of funds relating to the EMS contract to be used for the maintenance and service of the Citation II's engines." (DR. Compl. Par. 27). These are a few examples of why the core of operative facts in the Delta Romeo litigation and in the instant action are the same.

We also note that the Haskins letter that is the main piece of evidence relied upon by THS to support its fraud claim was allegedly dated July 30, 2001, which is well before the dismissal with prejudice in the Delta Romeo litigation. THS clearly could and should have brought the claims regarding Jet's alleged breach of contract and fraud relating to Contract 436-1 in the Delta Romeo litigation. Therefore, we conclude that there is an identity of the causes of action.


### C. Final Judgment

In the Delta Romeo litigation the case was dismissed with prejudice pursuant to a stipulation. THS has not responded at all to Jet's contention that the dismissal with prejudice constitutes a final judgment for *res judicata* purposes. The Seventh Circuit has made it clear that if a suit is "dismissed with prejudice, any issue concerning the bar of the statute of limitations to the refiling of the suit will be moot because a suit that has been dismissed with prejudice cannot be refiled; the refiling is blocked by the doctrine of res judicata." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000). However, in regards to the doctrine of *res judicata* the Seventh Circuit has also stated that "[t]he test for finality is not whether the suit is dismissed

11

with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground such as failure to exhaust administrative remedies when exhaustion is not a jurisdictional requirement . . .[but, rather the] test is whether the district court has finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144 -1145 (7th Cir. 2003); *See also Golden v. Barenborg,* 53 F.3d 866, 871 (7th Cir. 1995) (finding that there was a final judgment for res judicata purposes where plaintiff agreed to a stipulated dismissal with prejudice). Under either standard elucidated by the Seventh Circuit, we find that there was a final judgment in the Delta Romeo litigation for *res judicata* purposes.

### D. Further Considerations

As indicated above, all of the elements for the doctrine of *res judicata* are met in regards to the instant action. We also conclude that the interests of the courts are served by the application of the doctrine of *res judicata* in this action and such a ruling promotes fairness and the administration of justice. It would be unfair after the resolution of the issues surrounding THS and Contract 436-1 in the Delta Romeo litigation, for THS to years later spring claims upon Jet that were or could have been addressed in the Delta Romeo litigation. It was necessary for THS to bring its claims at that juncture to ensure finality regarding the Contract 436-1 ownership and all issues surrounding the same core of facts and to avoid future vexatious litigation by THS. The interests of the efficient operation of the judicial system and judicial

economy would have been served had THS brought its claims when they were on the forefront in the Delta Romeo action.

II. Compulsory Counterclaims

Jet argues that the claims included in Counts I and VI should be barred because, even if they are not barred under the doctrine of *res judicata*, the claims were compulsory counterclaims in the Delta Romeo litigation and could and should have been raised in the Delta Romeo litigation. Federal Rule of Civil Procedure 13(a) states the following:

> (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Fed. R. Civ. P.13(a). The goal in creating Rule 13(a) was to promote "judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994). *Id.* In determining whether Rule 13(a) applies "[t]he inquiry is not intended to be 'a wooden application of the common transaction label,' but

rather a careful examination of the factual allegations underlying each claim in determining whether the test is met." *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994)(quoting *Burlington Northern R.Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)). A compulsory counterclaim is a counterclaim "that must be filed to preserve the defendant's rights. . .[and] if made the basis of a separate suit it would be barred either by the force of Rule 13(a) itself, or by the prohibition in the doctrine of res judicata against splitting one's cause of action." *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1367 (7th Cir. 1990). The Seventh Circuit utilizes the "logical relationship" test to determine whether or not a "transaction or occurrence" is the same under Rule 13(a). *Burlington Northern R.Co.*, 907 F.2d at 711. Under the test "the words 'transaction or occurrence' should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a) . . .[and][a]s a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship . . . ." *Id.*

THS argues that any claims that it would have had against Jet in the Delta Romeo litigation would have been permissive cross-claims rather than counter-claims and THS argues that cross claims are not required to be raised. In regards to cross claims Federal Rule of Civil Procedure 13(g) states the following:

> (g) Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a

14

> counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g). Jet responds by arguing that in the Delta Romeo litigation Jet asserted an interpleader claim against THS and Jet became the interpleader-plaintiff. According to Jet, at that juncture Jet and THS became opposing parties with respect to Contract 436-1 and the trust balance. Jet also contends that since it filed the interpleader claim, which was a cross-claim, THS was obligated to respond with cross-claims against Jet that THS could and should have brought. According to Jet, once a cross-claim is filed, the co-parties become opposing parties for the purposes of compulsory counter-claims.

We agree with the reasoning presented by Jet. A counterclaim is not limited to a claim brought by a defendant against a plaintiff. Rather a counterclaim is defined merely as "[a] claim for relief asserted against an opposing party after an original claim has been made. . . ." BLACK'S LAW DICTIONARY 353 (7th ed. 1999). This definition is consistent with the reference in Federal Rule of Civil Procedure 13(a) to an "opposing party" rather than to a plaintiff and defendant. Fed. R. Civ. P. 13(a). While the initial filing of a crossclaim in an action is permissive, once the cross claim is filed, it is a claim like any other claim in an action. Thus, the compulsory counterclaim provisions would logically apply to any counterclaims that

could be brought in response to a crossclaim. As indicated above, Rule 13(a) is intended to promote judicial economy and to ensure that all claims relating to a set of facts are resolved together. Thus, such goals would only be served by requiring responsive compulsory counterclaims to be filed when a crossclaim is filed because the court will necessarily have to address the issues and facts connected to the crossclaim. If the court is going to address the merits of the crossclaim, then all of the same goals behind Rule 13(a) would apply to ensuring that related responsive claims to the crossclaim are resolved in the same action as the crossclaim.

THS contends that its responsive claim to Jet's crossclaim in the Delta Romeo litigation is a cross claim and is governed by Rule 13(g). However, in reality such a claim by THS would be both a crossclaim and a counterclaim, and thus, the claim would need to comply with both Rule 13(g) and Rule 13(a). Although Rule 13(g) would only render its filing permissive, THS would also need to comply with Rule 13(a) which renders the claim mandatory. Courts in other Circuits have agreed with this application of Rule 13(a) to crossclaims. *See e.g. Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Hawaii, L.P.,* 158 F.R.D. 656, 659 (D. Hawaii 1994). The facts and issues included in the Delta Romeo litigation were such that THS's claims in response to the crossclaim by Jet were compulsory counterclaims and THS thereby waived its right to file such claims by not doing so in the Delta Romeo litigation. *See Burlington Northern R.Co.,* 907 F.2d at 710 (recognizing that the compulsory counterclaim rule is a "harsh rule," but stating that "the rule serves a

valuable role in the litigation process, especially in conserving judicial resources" and, in balancing the "competing interests[,] . . .[t]he convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy."). Therefore, even if the claims asserted by THS in Counts I and VI were not barred by the doctrine of *res judicata* we would find that they are barred because they were compulsory counterclaims in the Delta Romeo litigation.

## CONCLUSION

Based on the foregoing analysis we grant Jet's motion for summary judgment on Counts I and VI. Counts II, III, IV, and V remain alive in this action.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 13, 2004