

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANS HELICOPTERE SERVICE,<br>a French limited company,<br><br>Plaintiff,<br><br>v.<br><br>JET SUPPORT SERVICES, INC.,<br>a Delaware corporation,<br><br>Defendant.<br>_____<br>JET SUPPORT SERVICES, INC.,<br>a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>TRANS HELICOPTERE SERVICE,<br>a French limited company,<br><br>Counterdefendant. | No. 03 C 0498 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Trans Helicoptere Services' ("THS") motion for reconsideration of our ruling on December 13, 2004, granting Defendant Jet Support Services, Inc.'s ("Jet") motion for summary judgment on Counts I and VI of the amended complaint. This matter is also before the court on

1

Jet's motion for leave to file a second amended counter-claim and to add a party. For the reasons stated below, we deny THS's motion for reconsideration and we deny Jet's motion for leave to file an amended counter-claim.

## BACKGROUND

Jet provides programs that fund the maintenance and repair of jet aircraft engines for the benefit of their customers who are the owners and operators of the jet aircraft engines. Jet does not personally provide engine maintenance and repair services, but rather provides a program to fund the services by third parties in the form of an engine maintenance service contract ("EMS Contract"). To obtain an EMS Contract, the customer must pay a one-time enrollment fee, an initial engine inspection fee and a monthly fee.

On or about December 29, 1997, THS entered into an EMS Contract with Jet for both engines of a Cessna Citation II aircraft ("Contract 436-1"). Section V(d)(iv) of Contract 436-1 is pertinent for the fraud claim in the instant action and it outlines Jet's policy for early termination of the contract, allowing a credit towards a replacement aircraft when certain conditions are met. In relevant part, Section V(d)(iv) states:

> In the event . . . the Customer sells the Aircraft and the purchaser does not wish to enroll in the Program . . . then the Customer shall be eligible for a credit (the "Credit") for certain amounts paid into the Trust to be applied toward any subsequently acquired aircraft (the "Replacement Aircraft") which the Customer enrolls in the Program. Once a Replacement Aircraft is accepted by [Jet] as being eligible for

2

> the Program, the Credit may be used to reduce the amount of the Pro
> Rata or Buy-In due on the Replacement Aircraft. The amount of the
> Credit shall be equal to 100% of all amounts paid with respect to the
> Engine(s) after deducting all expenditures made on behalf of, and
> expenses attributable to, the Engine(s).

On or about August 24, 1998, THS entered into another EMS Contract with Jet for coverage of both engines of a Falcon F100 aircraft ("Contract 476-1").

THS alleges that in or about February, 2001, THS contacted Jet to inform Jet that the aircraft covered by Contract 436-1 was sold to a new owner and contract 436-1 had not been transferred with the aircraft. THS claims that, pursuant to §V(d)(iv) of contract 436-1, THS requested the account balance of Contract 436-1 be transferred to Contract 476-1, which covered the Falcon F100 aircraft which was still owned by THS. According to THS, Jet contacted the new owner of the Cessna Citation II aircraft, Delta Romeo, Inc. ("Delta Romeo"), and induced Delta Romeo to assert a claim of ownership over Contract 436-1 against THS.

THS contends that around February of 2001 Jet decided not to transfer the balance from Contract 436-1 to Contract 476-1. In April of 2001, John Haskins ("Haskins"), President of Jet, wrote a letter to THS and Delta Romeo addressing certain issues and requesting that the parties resolve the dispute regarding Contract 436-1. Jet informed Trans H via letter dated May 2, 2001, that Contract 476-1 was being placed on "credit hold" due to arrearage in payments. From June 20, 2001, until March 5, 2002, Delta Romeo and THS litigated the issue of ownership to

Contract 436-1 in the Northern District of Illinois (case number: 01 C 4684)("Delta Romeo litigation"). The Delta Romeo litigation terminated when Delta Romeo filed a stipulation to dismiss the action with prejudice and on March 5, 2002, the court granted the motion to dismiss with prejudice and as part of the dismissal Jet was not required to transfer the trust balance to THS or Delta Romeo.

In a letter dated July 30, 2001, from Haskins to Michael Dreyfus, President of THS ("Haskins letter"), Haskins addressed certain issues in dispute between THS and Jet. THS claims that two particular statements within the letter give rise to their allegations of fraud, negligent misrepresentation and breach of fiduciary duty. THS claims that Jet promised that: (1) Jet would transfer a credit or "trust balance" owed to THS under Contract 436-1 to Contract 476-1, and (2) the trust balance equaled $40,571.12. THS contends that the balance was never transferred by Jet and that the balance of the trust account was in excess of $100,000. On September 14, 2001, Jet informed THS by letter that Contract 476-1 was being terminated for delinquent payments and in March of 2002, the contract was in fact cancelled.

On January 23, 2003, THS filed the instant action. On April 11, 2003, Jet filed a motion to dismiss the fraud claim (Count VI), the negligent misrepresentation claim (Count VII), and the breach of fiduciary duty claim (Count VIII). On March 30, 2004, we granted the motion to dismiss Counts VII and VIII of THS's amended complaint, and denied the motion to dismiss Count VI.

Jet subsequently filed a motion for summary judgment on the breach of

contract claim relating to Contract 436-1 (Count I) and on the fraud claim relating to Contract 436-1 (Count VI). On December 13, 2004, we granted Jet's motion for summary judgment in its entirety on Counts I and VI. THS now asks this court to reconsider its prior ruling. Jet also seeks leave to file an amended counterclaim.

## LEGAL STANDARDS

A motion for reconsideration may be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). Such motions cannot be used as a "vehicle to produce new evidence that could have been" produced earlier or as a vehicle to "rehash[]" the same arguments presented to the court on a prior occasion. *Id.*

Pursuant to Federal Rule of Civil Procedure 15(a) "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served." Fed. R. Civ. P. 15(a). If a party does not have a right to amend a pleading the "party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.*

## DISCUSSION

I. Motion For Reconsideration

THS contends in its motion for reconsideration that this court committed a manifest error of law when we granted Jet's motion for summary judgment on Counts I and VI. (Recon. Par. 3, 14). THS now argues that we erred in finding that the claims in the instant action were compulsory counter-claims in the Delta Romeo litigation, because THS's claims did not accrue until after the termination of the Delta Romeo litigation. However, we need not even address THS's accrual arguments because the motion for reconsideration is deficient on its face. THS never presented the accrual argument in its opposition to the motion for summary judgment. Thus, the basis for THS's motion for reconsideration is that this court erred in its summary judgment ruling by failing to consider an argument that was first presented to the court by THS in its motion for reconsideration. As explained above, a motion for reconsideration is not a vehicle that can be utilized by a plaintiff to present a new set of arguments to a court to see if the court prefers those arguments and will change its mind the second time around. That is precisely what THS has done in this instance.

THS argues in its motion for reconsideration that our prior ruling "is erroneous as a matter of law" because "THS neither should have nor could have raised in the Delta Romeo Litigation the claims referenced above that are now set forth in Counts I and IV because those claims did not accrue until after the Delta

Romeo Litigation ended." (Recon. Par. 14). However, the argument that THS could not have presented its claims in the Delta Romeo litigation because the claims had not accrued until after the termination of that litigation was never presented in THS's opposition to Jet's motion for summary judgment. Not only was THS's accrual argument absent from its opposition to the summary judgment, THS actually presented arguments that were contrary to the accrual position that it now takes in its motion for reconsideration.

THS devoted its opposition to the motion for summary judgment to arguing that the claims that it could have brought in the Delta Romeo litigation were merely permissive counter-claims rather than compulsory counter-claims. Thus, by acknowledging the fact that the claims were permissive, THS also acknowledged that the claims could have been brought. For example, THS argued in its opposition to the motion for summary judgment that "THS was not required to bring its instant claims against JSSI in that litigation because the Delta Romeo Litigation did not involve the issues raised in this litigation." (SJ Opp. 2). If, as THS now contends, the claims had not accrued during the Delta Romeo litigation and THS could not have brought the claims, it would not matter whether or not the issues in the instant action were the same. THS also argued in its opposition to the motion for summary judgment that a "failure to bring permissive cross-claims does not preclude claims in future litigation." (SJ Opp. 2). THS thus, expressly acknowledged that it had "claims" that it could have brought in the Delta Romeo litigation, but contended that

7

the claims were merely permissive counter-claims.

THS's position that it had permissive counter-claims that it could have presented in the Delta Romeo litigation was not presented as an alternative argument to the accrual argument. The permissive counter-claim argument and arguments attacking the elements of *res judicata* were the only arguments presented by THS in its opposition to the motion for summary judgment. THS utilized only five of the fifteen pages allowed for its opposition to the motion for summary judgment and could have presented the accrual argument if it desired to do so. It is only now after THS has had an opportunity to gage the court's reaction to THS's first set of arguments that THS now seeks to proceed with its accrual argument. Such a utilization of a motion for reconsideration is improper.

Jet points out in its answer to the motion for reconsideration that THS failed to raise the accrual argument during the briefing on the motion for summary judgment. THS attempts to sidestep the issue by ignoring Jet's argument until a few of the final paragraphs at the end of THS's reply brief. Even in those concluding paragraphs THS fails to make a meritorious argument. THS argues in its reply brief that its argument "that it was not required to bring its breach of contract and fraud claims in the Delta Romeo Litigation is not new." (Recon. Reply. 11). However, such is not the argument that THS is now presenting to this court in its motion for reconsideration. Arguing that THS's claims did not accrue until after the Delta Romeo litigation and that they could not have been brought, is completely different

8

from arguing that THS was not required to bring the claims during the Delta Romeo litigation.

THS claims that "THS argued in its summary judgment briefing that the claims now at issue were not involved in the Delta Romeo Litigation as permissive counterclaims (PM 2), compulsory counterclaims (PM 2) or anything else." (Recon. Reply. 12). Such a statement by THS is clearly inaccurate. While it is true that THS argued that the claims were not compulsory counter-claims, THS did argue that the claims were permissive counter-claims. If THS intended to argue in its opposition to summary judgment that its claims were not even permissive counter-claims then THS should have offered some explanation for statements in its opposition such as that a "failure to bring permissive cross-claims does not preclude claims in future litigation." (SJ Opp. 2). If THS truly believed at the time it opposed summary judgment that THS's claims were not permissive counterclaims, then there would be no logical explanation for its warning to the court that a "failure to bring permissive cross-claims does not preclude claims in future litigation." (SJ Opp. 2). THS provided no such explanation because its position that it currently takes is clearly contrary to its position taken during the briefing on the motion for summary judgment. We also note that THS has utterly failed to provide any page citation to its summary judgment opposition that shows that THS presented its accrual argument at that juncture. It is clear that THS did not present the accrual argument in its opposition to summary judgment. If THS intended to pursue such an

argument, it was THS's obligation to present the argument in its opposition brief rather than in a motion for reconsideration filed six months later after the court has already ruled on the motion for summary judgment.

Another defect with THS's motion for reconsideration is that if THS intended to pursue the accrual argument, THS would have been obligated to point to evidence to support its contentions that the claims did not accrue during the Delta Romeo litigation. THS points to no such evidence. Instead, THS points to allegations in the complaint that THS contends show that claims did not accrue until after the Delta Romeo litigation. For instance, THS argues that "[t]he Complaint makes clear that Contract 436-1 was not canceled by JSSI until after the Delta Romeo Litigation came to an end." (Recon. Par. 9). Jet pointed to evidence that would suggest that the claims could have accrued before the end of the Delta Romeo litigation. As is expressly provided for in Federal Rule of Civil Procedure 56(e), at the summary judgment stage THS cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Thus, THS also improperly supports its accrual position with mere allegations in its complaint.

THS did not present the accrual argument to the court during the briefing on Jet's summary judgment motion. It was THS's obligation to present that argument at that juncture. The accrual issue was not an obvious defect that sprung from the evidence before the court at that juncture and it was entirely proper for this court to

address the parties' arguments presented without making a *sua sponte* inquiry regarding when the claims might have accrued. THS had every opportunity to present the accrual argument to the court and chose not to do so. This fact is best illustrated by THS's decision to utilize only five of the allowable fifteen pages to respond to Jet's motion for summary judgment. Therefore, we deny THS's motion for reconsideration.

## II. Motion for Leave to File an Amended Counterclaim

Jet seeks leave to amend its counterclaim and for leave to join as a Defendant Jet Engine Maintenance Trust ("Jet Trust"). If a party does not have a right to amend a pleading "a district court may deny leave to amend on the grounds of undue delay, bad faith, dilatory motive, prejudice, or futility." *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004)(stating that "[t]he district court's decision to grant or deny a motion for leave to file an amended pleading is 'a matter purely within the sound discretion of the district court.'")(quoting in part *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991)). However, a finding of delay is not by itself a sufficient "reason to deny a motion for leave to amend." *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)(stating that "[d]elay must be coupled with some other reason" and "[t]ypically, that reason. . . is prejudice to the non-moving party).

Jet claims that it seeks merely to add Jet Trust as a Defendant and Jet asserts

11

that it intends to represent Jet Trust in this litigation. Jet contends that there are no other proposed changes to the answer or amended complaint or affirmative defenses. (Mot. Par. 11). Jet also contends that the proposed amendment does not alter the essential characteristics of its counterclaims and thus the amendment will not in turn create a need for additional discovery. (Mot. Par. 15).

THS disagrees with Jet's characterization of the amendment as minor. THS claims that the amendment is a significant alteration and that, in all fairness, if the amendment is granted, THS would be entitled to additional discovery regarding the new party entering the litigation. THS argues that Jet Trust failed to attempt to enter the instant action until after over two years of litigation in this action and THS asserts that it will be prejudiced if the Jet Trust is allowed to enter this action at this juncture.

Although pursuant to Federal Rule of Civil Procedure 19(a) indispensable parties may be joined in an action. Jet Trust is not an indispensable party in the instant action. The remaining counts in this action pertain to contracts between THS and Jet. Jet Trust was not a party to either contract. Neither has Jet shown that Jet Trust's ability to protect its interests would be impaired if it were not joined. Joinder is not feasible at this stage of the litigation. We also agree with THS that it would be prejudicial to THS to allow Jet Trust to enter this litigation at this late stage and that there has been an undue delay by Jet in this regard. We agree with THS that it is too late to introduce Jet Trust in this action and we therefore deny Jet's motion for leave

to file an amended counter-claim and add a new party.

## CONCLUSION

Based on the foregoing analysis, we deny THS's motion for reconsideration and we deny Jet's motion to for leave to file an amended counter-claim and to add a new party.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 24, 2005

13